IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


JODY M. MOODY,

    Plaintiff,

vs.                                                  CASE NO. 5:06CV162-RS/AK

MICHAEL J. ASTRUE,[1]
**Commissioner of Social Security**

    Defendant.

_____/


**REPORT AND RECOMMENDATION**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act and for supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

A.   **PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on September 18, 2003, alleging a disability onset date of May 22, 2003, because of neck and shoulder pain, depression and carpal tunnel syndrome.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on June 10, 2005, and entered an unfavorable decision on August 23, 2005.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

B.   **FINDINGS OF THE ALJ**

Plaintiff is insured for disability benefits through December 31, 2008.  (R. 17). She has a severe impairment, degenerative disc disease, as confirmed by a January 2005 MRI, which shows large herniated discs at L3-4 andL4-5 and significant deformity of the exiting nerve roots at L3 and L4, mild stenosis at L4-5 and mild to moderate stenosis at L3-4.  (R. 20).  Her other conditions, depression and carpal tunnel syndrome, are not considered to be severe.  She has never received treatment from a mental health professional and the consultative mental examiner found no serious limitations from her depression.  (R. 20).  Likewise, the examinations of her hands show only occasional loss of grip strength and numbness such that any limitations would not preclude her working with this condition. (R. 21).  The ALJ found that Plaintiff did not meet the requirements of Listing 1.04 because there was no evidence of nerve root compression, spinal arachnoiditis or spinal stenosis to the degree specified in the listing,

**No. 1:02CV125-SPM/AK**

nor did she have an inability to ambulate effectively or to perform fine and gross dexterous movements as required under Listing 1.00(2)(b) and (c).  (R. 21).  The ALJ found that her reports of intensity, duration and limiting effects of the pain symptoms are not entirely credible because she had only been treated conservatively since her neck fusion, which appeared to be intact and not compressing on any nerves, no evidence of disc herniation or stenosis.  (R. 22).  Also, Plaintiff reported neck pain only "at times" and that her medication was decreasing her pain in the neck and lower back.  (R. 22). Plaintiff also reported daily activities that are inconsistent with her reported limitations that she needs assistance in daily grooming and dressing, especially in light of the benign clinical findings and lack of extensive treatment.  (R. 23).  The ALJ found the opinions of Drs. Reed and Elzawahry, that she was totally disabled, not credible since Dr. Reed's opinion was unclear as to whether she was precluded from her work as a nurse or all work and was rendered prior to the MRI which showed nothing but degenerative changes, no herniation, compression or stenosis.  Dr. Elzawahry's opinion is questionable because he saw her only once and appeared to base his decision on her self-reported allegation that the neck fusion had fractured, which is not true.  (R. 23).

As for Plaintiff's RFC, the state agency doctors found her capable of medium work, but giving her every benefit of the doubt, the ALJ found her limited to unskilled light or sedentary work, which precludes her past relevant work, but the vocational expert identified a number of jobs which she could still perform: blood donor assistant,

**No. 1:02CV125-SPM/AK**

lab assistant, news assistant, medical biller, medical fee clerk, and title clerk. (R. 25). Therefore, she is not disabled.

C.      ISSUES PRESENTED

Plaintiff argues that the ALJ relied upon an RFC assessment with no basis in the record and no consideration of the January 2005 MRI, and the ALJ also rejected the RFC assessments of Plaintiff's treating sources; the ALJ did not properly consider the severity of Plaintiff's carpal tunnel syndrome, ulnar neuropathy, and cervical radiculopathy; and that the ALJ improperly discredited the opinions of Plaintiff's treating physicians without good cause.

The Commissioner responds that the ALJ referred to the January 2005 MRI, and also pointed to the record for support of his assessment that her pain was not as disabling as she alleged because she sought no treatment for back pain from March 2004 through the relevant period.  Further, the ALJ relied upon the treatment notes of treating physician Dr. Reed to support his finding that these notes were inconsistent with his conclusions about her limitations.  The ALJ further discredited the limitations imposed by Dr. Elzawahry, who examined Plaintiff only once, because he accepted her subjective complaint that the fusion in her neck was broken, which is contradicted  by MRI, and upon which he based his opinion about her limitations.  The ALJ also relied upon objective tests to support a finding that her ulnar, carpal tunnel syndrome, and radiculopathy were not severe since she exhibited normal hand strength, and she sought little treatment for these conditions.  Finally, the ALJ did not assess Plaintiff's

**No. 1:02CV125-SPM/AK**

RFC without some medical bases, there were two non-examining physicians who actually found Plaintiff capable of doing medium work level, a higher exertional level than the ALJ found.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

### D.    STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to

**No. 1:02CV125-SPM/AK**

the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

**No. 1:02CV125-SPM/AK**

4.   Does the individual have any impairments which prevent past relevant work?

5.   Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

E.   **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Treatment notes of Dr. Michael Reed begin in 1992 for neck pain following a work related injury.  (R. 225).  An MRI showed spinal cord impingement and he suggested a cervical fusion (R. 224), which she underwent on October 13, 1992, (R. 231-235), which resulted in good alignment, reduction in pain, and it was planned on November 25, 1992, to return her to work.  (R. 223).  She was given 11% partial

**No. 1:02CV125-SPM/AK**

permanent impairment as of January 25, 1993, with no lifting over 10 pounds and no overhead activity. (R. 221). She had no serious issues with her neck complaining of periodic neck pain, treated on occasion with trigger point injections (R. 209-220), until June 9, 2003, when she reported increasing neck pain and an x-ray and MRI were done, which showed no change in the position of her hardware, but "increasing degenerative change at C4-5." (R. 208). These changes were deemed to be "mild." (R. 207). Injections were repeated and a home traction unit was discussed. (R. 206-207). A complete back examination was done on March 31, 2004, by Dr. Reed, whose impressions were lumbar disc disease with radiculopathy and cervical disc disease and recommended continued conservative treatment. (R. 204-205). On May 17, 2004, he suggested removing the plate and redoing her fusion. (R. 201). Plaintiff declined the suggestion. (R. 236).

Dr. Reed wrote two letters, the first one dated November 5, 2003, was addressed "To Whom It May Concern" stating that "[s]he is totally disabled from any kind of nursing duty." (R. 230). In a second letter, dated November 17, 2004, he limited her to sedentary work (no lifting greater than 5 pounds, no prolonged sitting or standing longer than 30 minutes without a break, and no repetitive activity wit her upper extremities), noting that her condition "has not increased her permanent impairment, but does give her significant physical restrictions." (R. 199).

**No. 1:02CV125-SPM/AK**

Plaintiff had cervical injections on September 26, 2003, and October 31, 2003. (R. 131-134). She also received physical therapy with some degree of relief. (R. 135-141).

The report dated March 24, 2004, of Dr. Elshazly indicates that Plaintiff told him an x-ray showed a fractured plate in her cervical spine. (R. 143). He found her to have 50% range of motion in her cervical spine, but full range of motion elsewhere. (R. 146-147). He also found her hand joints, grip, strength and fine manipulation to be normal, her gait to be steady, her neurological exam was normal, with no motor deficits. (R. 145). He suggested a mental status exam because he found her to appear "emotional" with "flight of ideas" and she spoke too much. (R. 145).

Dr. David Loiry, a clinical psychologist, examined Plaintiff on May 7, 2004, and found her to have a mood disorder related to her physical impairments. (R. 155-156).

Two Psychiatric Review forms were completed assessing this condition and finding that it did not limit her or only mildly limited her daily activities. (R. 157-170, 179-191). Significant to these findings were the facts that she had not sought any mental health treatment and received anti-depressant medication and Xanax from her physical treating physicians. (R. 191). Also significant was the fact that she claimed no limitations from her mental condition. (R. 191).

Dr. Kamel Elzawahry examined Plaintiff on October 19, 2004, and found that she suffered from cervical and lumbar disc disease and was "limited in her ability to return to work." (R. 193). He did not have an MRI at the time of his examination and report. (R. 195). He listed her "status post fracture of the fusion with worsening of

**No. 1:02CV125-SPM/AK**

symptomatology" apparently from her reports only, and upon exam found her to have normal tone, power, coordination and reflexes in both upper and lower extremities." (R. 195). Gait and station were normal, but she had only 50% range of motion in her lumbar region. (R. 195). He opined that she "remains totally and permanently disabled...and will not be able to return to gainful employment." (R. 195). His functional capacities assessment was at a less than sedentary level. (R. 196). However, the MRI was done after his examination, on November 24, 2004, and showed no fracture, "near anatomic" alignment, with only "slight impingement on the thecal sac centrally and to the right C6-7," degenerative changes at multiple other levels ...without disc herniation or neural compression. Mild to moderate forminal stenosis bilaterally at multiple levels." (R. 197-198).

An EMG conducted on December 15, 2004, showed mild bilateral carpal tunnel syndrome with mild ulnar neuropathy. (R. 226-227).

An x-ray of the lumbar spine on January 12, 2005 showed multilevel disc disease with large disc herniations at L3-4 and L4-5 with significant deformity of both exiting nerve roots. (R. 228).

An MRI of the lumbar, thoracic and cervical spine on February 2, 2006,[2] showed mild to moderate disc bulging at several cervical levels, with some significant forminal

---

[2] This report was not before the ALJ, whose decision was rendered on August 23, 2005, but was sent to the Appeals Council, which considered the new evidence, but denied review. (R. 4-7).

**No. 1:02CV125-SPM/AK**

narrowing with severe loss of disc space in the lumbar area with multilevel spondylosis, worst at L4-L5 where there is severe narrowing of the left neural foramen. (R. 246-250)

Two RFC's done on April 19, 2004 and September 2, 2004, by state agency physicians found her capable of medium work. (R. 147-154, 171-178).

### F.   SUMMARY OF THE ADMINISTRATIVE HEARING

Plaintiff appeared with counsel for the hearing and testified that she was 48 years old with a 15 year work history as a nurse. (R. 255-257). Her two primary problems are a neck plate that has come apart and needs to be removed, as well as advanced degenerative disc disease in her lower back. (R. 255). She quit working in May 2003 because she could no longer work without medication. (R. 260). She describes her neck pain as "24/7" with her best days at a 4 on a pain scale of ten and on her worst days it is "10 plus." (R. 263). As for her lower back, an average day is a "4" and the worst day is a "20." (R. 264). She has not received any mental health treatment and gets medication from her pain management doctor. (R. 265). Symptoms of her depression are sleeplessness, loss of memory and concentration, mood swings, anger, frustration, panic attacks, and isolation. (R. 266). Her estimated level of activity is walking about ten minutes, standing no more than one hour, lifting five pounds, but she has difficulty holding items such as a cup, a toothbrush, and a pen, with her right hand and needs assistance at least daily with either personal grooming or dressing or cooking. (R. 271). She no longer does household chores, but can drive short distances for errands. (R. 271). She has several hobbies, such as sketching, reading, graphics

**No. 1:02CV125-SPM/AK**

on a computer, arts and crafts, but she is unable to do these any more. (R. 272). Her days are spent moving from one position to another trying to get comfortable or laying in bed "trying to get motivated for the day." (R. 273). She might read or go to the post office with her parents, with whom she presently lives. (R. 273). According to Plaintiff, Dr. Reed has suggested three surgeries to help her present condition, one to remove the broken plate, a second one to replace it, and a third one for her lower back, a discectomy. (R. 274). She would require a year to recover between the two neck surgeries. (R. 274). She currently sees Dr. Reed every four months or whenever she reschedules her appointments. (R. 278).

The vocational expert testified that she could not perform her past relevant work as a nurse given the following hypothetical: a younger individual, high school education, limited to light or sedentary, with occasional postural limitations, and medication side effects that would limit her to unskilled work due to concentration problems. (R. 280). The expert identified a number of jobs in the national economy which she could perform. (R. 281).

## G.  DISCUSSION

### a) RFC assessment

An individual's ability to work must be assessed in light of all her impairments and any related symptoms, including pain, which is referred to as their residual functional capacity (RFC). 20 CFR §404.1545. A person's residual functional capacity is based on the *most* they can do despite their limitations. *Id.* In making this determination all of

**No. 1:02CV125-SPM/AK**

a person's impairments are considered, even those which are not considered severe, and the entire record is to be considered, even non-medical information.  *Id.*  The claimant is responsible for providing this evidence.  *Id.*  This assessment is first used at Step Four of the evaluation process.  If the ALJ determines that a claimant cannot do his past relevant work, then the same RFC will be used at Step Five in conjunction with the Guidelines to decide if the person can make an adjustment to other work in the national economy.

      Medical opinions from treating sources are entitled to "special significance" and may be entitled to controlling weight if they are well-supported by clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence.  If the ALJ's assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p.

      Plaintiff is factually incorrect that the ALJ did not consider the January 2005 MRI, as he specifically referenced this test in his opinion.  (See R. 20).  Plaintiff is also incorrect that the ALJ failed to explain his reasons for rejecting the RFC assessments of Plaintiff's treating sources, Drs. Reed and Elzawahry.  The ALJ specifically referenced both opinion letters of Dr. Reed.  (R. 23).  In the first letter dated November 5, 2003, Dr. Reed stated that Plaintiff could no longer work as a nurse, but he did not preclude her from all work .  In a second letter dated November 17, 2004, Dr. Reed limited her to sedentary work, but this letter was written prior to his review of MRI results which showed only degenerative changes with no herniation or nerve compression.  (R. 23).

**No. 1:02CV125-SPM/AK**

Thus, the ALJ gave explicit reasons for his not accepting fully the opinions set forth in these letters. (R. 23). The ALJ also gave reasons for rejecting the opinion of Dr. Elzawahry because it was not based on objective testing, but was based on her allegations that the neck fusion was broken, a condition that was not found on the MRI. (R. 23). Dr. Elzawahry is not considered a treating physician also. A treating physician is defined as a "medical source who provides [the claimant] or has provided [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 CFR §404.1502. A one time consultative examiner is not considered a treating physician and their opinion is not accorded the same weight. Wilson v. Heckler, 734 F.2d 513, 516 (11th Cir. 1984); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).

Thus, it appears that the factual premises for these arguments are not well founded, and the claims are therefore not well taken.

b) Severity of Plaintiff's hand condition

Plaintiff argues that the ALJ minimized her upper body limitations, specifically the carpal tunnel syndrome, ulnar neuropathy, and cervical radiculopathy. The ALJ has "wide latitude" in evaluating the weight of evidence, Owens v. Heckler, 748 F.2d 1511, 1514 (11th Cir. 1984), and may properly find subjective complaints not credible so long as she articulates reasons that are supported by the record. Jones v. Department of HHS, 941 F.2d 1529 (11th Cir. 1991). In the present case, the objective studies of record showed *mild* bilateral carpal tunnel syndrome with *mild* ulnar neuropathy. (R.

**No. 1:02CV125-SPM/AK**

226-227). A condition that imposes no more than minimal limitations on a person's ability to perform work related functions is not severe within the meaning of the regulations. 20 CFR §§ 404.1520(c) and 416.920(c). Thus, there is no evidence beyond Plaintiff own complaints that supports a finding that these conditions are severe, and the ALJ specifically rejected her complaints of the intensity, duration and limitations as she reported them.

This includes Plaintiff's complaints of neck pain. As the ALJ noted, she continued to receive conservative pain management, had refused surgery, yet complained of pain so severe that she was unable to dress and groom herself most days. Plaintiff described being virtually immobilized from pain, moving from one position to another throughout the day to minimize her pain levels, unable to enjoy even the most sedentary of activities such as reading, drawing, and crafts, yet she was not going to see her treating physician but every 4 months and had refused his only solution, which is to remove the fusion plate and replace it. It is not credible that a person would not take such a suggestion, if indeed it was her asserted belief that the cause of her pain was a broken fusion plate. This factor, too, is troubling in that Plaintiff is a nurse and should have more understanding of the surgical processes described to her than an layman, at least. Additionally troubling is the fact that there is no evidence to support her contention that the fusion plate is broken, a fact that she related to other examining physicians, when the MRI shows that the plate is intact and in alignment. Thus, there was more than ample support for the ALJ's finding that her hand conditions were not

**No. 1:02CV125-SPM/AK**

severe and that her complaints of disabling pain and limitation resulting from her neck (and back) were not entirely credible.

    c) Treating physicians opinions

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

**No. 1:02CV125-SPM/AK**

The ALJ in the present case provided explicit and adequate reasons supported by the record and objective clinical tests and treatment notes for rejecting the opinion of Dr. Reed, as expressed in his opinion letters, and that of Dr. Elzawahry, who as a one time examiner, is not a treating physician.  This is all the law requires of the ALJ with regard to treating physician opinions.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this ____**1st**__ day of August, 2007.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:02CV125-SPM/AK**